REQUESTED BY: Senator Tom Vickers Nebraska State Legislature Room 1110, State Capitol Lincoln, NE 68509
Dear Senator Vickers:
This in response to your inquiry pertaining to LB 45 of the Eighty-Eighth Legislature, First Session (1983). In that letter you ask if this legislative bill, as amended, is constitutional.
Neb.Rev.Stat. § 79-1701 (Reissue 1981) provides, in part, `all private, denominational, and parochial schools in the State of Nebraska, and all teachers employed or giving instruction therein, shall be subject to and governed by the provisions of the general school laws of the state so far as the same apply to grades, qualifications, and certification of teachers and promotion of pupils.' That statute, however, is currently qualified by Neb.Rev.Stat. § 79-1703 (Reissue 1981) which provides `nothing in sections 79-1701 to 79-1704 contained shall be so construed as to interfere with religious instruction in any private, denominational, or parochial school.'
LB 45, as amended, would strike the original sections in this legislative bill and insert a new section which would amend Neb.Rev.Stat. § 79-1703 (Reissue 1981) to read as follows:
 79-1703. (1) Nothing in sections 79-1701 to 79-1705 shall be so construed as to interfere with religious instruction in any private, denominational, or parochial school.
 (2) If the chief administrative officer of any nonpublic elementary school offering instruction through the eighth grade and the parents or guardians of all pupils enrolled therein file a statement with the Commissioner of Education declaring that the requirements of sections 79-1233 and 79-1701 to 79-1705 constitute such interference with regard to them, the commissioner shall waive the requirements of such sections and all rules and regulations relating thereto, as they apply to such school, its teachers, and pupils.
 (3) Any waiver granted pursuant to subsection (2) of this section shall not excuse compliance with Chapter 79, article 2, with regard to attendance, and reporting of attendance, at such nonpublic elementary schools, nor shall such waiver excuse compliance with any requirements relating to health, safety, and fire hazards. For purposes of this section and section 79-201 attendance at a nonpublic elementary school which has a waiver pursuant to subsection (2) of this section shall constitute attendance at a private denominational or parochial school.
 (4) Any waiver granted pursuant to subsection (2) of this section to any nonpublic elementary school may be revoked by the commissioner, following notice and opportunity for public hearing before the State Board of Education, if it is determined that children attending such nonpublic elementary school are not progressing academically based on the results of nationally recognized achievement tests to be selected and administered by the commissioner. Such tests shall not be given more often than annually.
 The commissioner shall adopt rules and regulations for the purpose of establishing standards for the determination of when children attending nonpublic elementary schools which have received a waiver pursuant to subsection (2) of this section are progressing academically. In selecting the test to be administered and in promulgating the rules and regulations which establish acceptable academic progress the commissioner shall consider:
 (a) Prevalent useage sic of achievement tests in the public, private, denominational, or parochial schools of this state;
 (b) Current levels of achievement on tests prevalently used by public, private, denominational, and parochial schools of this state; and
 (c) The extent to which the results of any test selected by the commissioner may be subject to error or statistical deviation.
 Reasonable costs incurred by the commissioner in the administration of such testing shall be chargeable to the nonpublic elementary schools which file a statement for a waiver pursuant to subsection (2) of this section. The testing shall be administered within the county in which the nonpublic school is located at locations to be determined by the commissioner having due regard for the cost and convenience of the parties involved and assurance of an impartial, controlled, testing atmosphere.
The above-quoted amendment appears to be somewhat uncertain or indefinite in some of its provisions which are essential to or connected with the statute as a whole. For example, section 2 of the amendment would permit the chief administrative officer of any nonpublic elementary school offering instruction through the eighth grade and the parents or guardians of all pupils enrolled therein to file a statement with the Commissioner of Education declaring that certain statutes constitute an interference with regard to them, but it does not state the frequency that such filing must be made. The question immediately arises as to whether one such filing would cover all period of time in perpetuity? Or must the filing be made annually or perhaps semiannually to coincide with the fall and spring semesters? If not, what is the frequency of such filings. There is another uncertainty associated therewith. Must a new or an amended statement be filed in the event that a child enrolls in such a school after the Commissioner of Education has granted a waiver pursuant to subsection 2 of this amendment?
There are other uncertainties. Subsection 4 of this amendment would grant the Commissioner of Education the authority to revoke a waiver granted pursuant to subsection 2 `if it is determined that children attending such nonpublic elementary school are not progressing academically based on the results of nationally recognized achievement tests.' Query may the Commissioner of Education revoke the waiver any time it comes to his or her attention that two or more children enrolled in such a school are not progressing academically? Or does this mean that the Commissioner of Education may revoke the waiver only when it is determined thatall the children enrolled in such a school are not progressing academically? If the waiver is revoked by the Commissioner of Education, the question arises whether the revocation is permanent. If not, what is the period of time? At least equally important, what happens to the children who have attended a nonpublic school which has been granted a waiver when it is determined by the Commissioner of Education that they or some of their classmates are not `progressing academically based on the results of nationally recognized achievement tests?' Must the children be enrolled in a public school? Or may the children be enrolled in another nonpublic school in which a waiver has been granted? Or may the children be enrolled in a legally approved nonpublic school which has not requested a waiver?
The above are just a few of the uncertainties associated with this amendment. It is, of course, a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Grayned v.City of Rockford, 408 U.S. 104 (1972). Vague laws offend several important values. First, man is free to steer between lawful and unlawful conduct. Consequently, courts quite properly insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. Third, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Where, as here, a section of a legislative bill contains a number of uncertainties which are connected with the legislative bill as a whole, we can only conclude that it is void for vagueness. It is therefore our opinion that the above-quoted amendment is unconstitutional.
Very truly yours, PAUL L. DOUGLAS Attorney General Harold Mosher Assistant Attorney General